UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**REGIONS BANK,**

                          **Plaintiff,**

    vs.                                          **6:22-CV-933**
                                                        **(TJM/ATB)**

**RISING PHOENIX HOLDING CORPORATION, et al.,**

                          **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

## DECISION & ORDER

Before the Court are Defendants' motion to dismiss or stay this action. See dkt. # 34. The parties have briefed the issues and the Court will decide the issue without oral argument.

**I.    BACKGROUND**

Plaintiff Regions Bank is an Alabama banking corporation with its principal place of business in Birmingham, Alabama. Complaint, dkt. # 1 ("Complt."), at ¶ 1. The defendants, Rising Phoenix Holding Corporation, Tidal Basin Government Consulting, LLC, and NBT Bancorp Incorporated ("NBT") are all business organizations organized and operating in states other than Alabama. Id. at ¶¶ 2-4. Plaintiff invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332 and under the Declaratory Judgment Act, 28 U.S.C. § 2201.

1

Plaintiff alleges that this action grew out of "fraud that was perpetrated on Rising Phoenix and Tidal Basin." Id. at ¶ 16. Rising Phoenix serves as "parent company" for "the nation's leading disaster preparedness and recovery firms." Id. at ¶ 18. Tidal Basin, a Rising Phoenix subsidiary, "contracted with the State of Florida's Division of Emergency Management to support Florida's COVID-19 vaccination program." Id. at 19. Tidal Basin engaged MCI BPO LLC ("MCI") to staff a call center as part of this work. Id. Tidal Basin owed more than $75,000 to MCI for these services in October 2021. Id.

Tidal Basin has an account at NBT. Id. at ¶ 20. Plaintiff alleges upon information and belief that "a Tidal Basin or Rising Phoenix employee or officer opened a fraudulent email which allowed the fraudsters to gain access to their email system." Id. This method provided the "fraudsters" with "access to the email account of Rising Phoenix's Vice President and Project Finance Chief." Id. Those bad actors then sent a fake email posing as MCI's CEO. Id. at ¶ 21. The email "informed Rising Phoenix that the payment owed to MCI should be sent to an account at Regions Bank[.]" Id. The email provided an account number to Rising Phoenix's Vice President and Project Finance Chief. Id. The number did not belong to anyone connected to MCI. Id.

According to Plaintiff, Richard Ross, an attorney in Florida, possesses an Interest on Trust Account ("IOTA") account with Regions Bank. Id. at ¶ 17. The Florida Supreme Court mandates that attorneys in that state keep an IOTA account to "receive or hold client funds on a short term basis." Id. The email purporting to come from MCI's CEO provided this account number to Rising Phoenix. Id. at ¶ 21. "Rising Phoenix then directed NBT to initiate the Transaction from Tidal Basin's account at NBT to Ross's account at Region's Bank." Id. Rising Phoenix believed that the account belonged to MCI. Id.

2

This case involves in part the operations of NACHA[1], which Plaintiff explains "is a nonprofit organization which convenes financial institutions and other entities to enhance and enable electronic payments through the ACH network." Id. at ¶ 22. "ACH" is an "automated clearinghouse." Id. Transfers like the one to Ross's IOTA account "are governed by the NACHA Operating Rules." Id. Regions Bank is a member of NACHA as a "direct financial institution." Id. NBT is also a NACHA member. Id. NACHA members can "use the ACH network to initiate and to receive ACH debits and credits." Id. Members of NACHA, like NBT and Regions Bank, "are bound by the NACHA Operating Rules." Id.

NBT sent the transaction in question to Regions Bank. Id. at ¶ 23. Under the NACHA Operating Rules, NBT was the "Originating Depository Financial Institution ("ODFI")." Id. Tidal Basin was "the Originator" for the transaction. Id. Regions Bank was the Receiving Depository Financial Institution ("RDFI") under the NACHA rules. Id. NACHA rules mandate that NBT "represented and warranted to Regions Bank" that Tidal Basin had "properly authorized" the transfer of funds. Id. at ¶ 24. Now, however, NBT, Tidal Basin, and Rising Phoenix all "claim the Transaction was not authorized." Id. NBT, Tidal Basin, and Rising Phoenix hold Regions Bank "responsible for this loss, which exceeds $75,000." Id. The NACHA operating rules provide that an ODFI that "breaches a representation or warranty . . . shall indemnify the RDFI against any and all claims, demands, losses, liabilities, or expenses, including attorneys' fees and costs that result directly or indirectly from the breach of warranty." Id. at ¶ 25.

Regions Bank had to accept the transfer from NBT under NACHA's rules. Id. at ¶

---

[1]The Complaint does not explain what "NACHA" stands for.

3

26. Under those NACHA rules, "Regions Bank was entitled to rely solely on the account number" provided in the exchange. Id. Alabama law similarly permits a bank to rely on an account number in an electronic funds transfers. Id. at ¶ 27. New York law also "provide[s] that a bank is entitled to rely solely on the account number contained in an electronic funds transfer." Id. A credit from ACH "is considered an electronic funds transfer." Id.

When the funds entered Ross's IOTA account, Ross "instructed Regions Bank to initiate wire transfers . . . to various banks." Id. at ¶ 28. Each of these transfers exceeded $75,000. Id. NBT, Rising Phoenix, and Tidal Basin claim that the proceeds from the original transfer did not belong to Ross or to one of Ross's clients. Id. at ¶ 29. NBT, Rising Phoenix, and Tidal Basin have allegedly recovered some of the missing funds, but the amount outstanding exceeds $75,000. Id. at ¶ 30.

Plaintiff's Complaint contains three counts. Count I alleges a Breach of Warranty against NBT. Plaintiff contends that, pursuant to the NACHA rules, "NBT warranted to Regions Bank that the" transfer of funds "was properly authorized." Id. at ¶ 32. NBT breached that warranty because the transfer was not properly authorized. Plaintiff seeks indemnity from NBT for "any and all claims, demands, losses, liabilities, or expenses, including attorneys' fees and costs that result directly or indirectly from the breach of warranty." Id. at ¶ 35. Count II seeks a declaratory judgment that "Regions Bank was entitled to rely solely on the account umber provided by NBT associated with the Transaction" and that "NBT must indemnify Regions Bank for any claim or loss arising as a result of the Transaction, including a declaration that NBT is obligated to reimburse Regions Bank for its costs of defense, including attorneys fees and costs." Count III seeks

a declaratory judgment with reference to Rising Phoenix and Tidal Basin. That count notes that Rising Phoenix and Tidal Basin allege that Regions Bank violated Alabama law by accepting the transfer in question "based solely on the account number NBT" gave Regions Bank. Id. at ¶ 41. Plaintiff asserts that Alabama law permitted Regions Bank to rely on the account number. Id. at ¶ 44. Plaintiff seeks a declaratory judgment providing that: "Regions Bank was entitled to rely solely on the account number" provided for the transfer; "that any and all common law claims allegedly arising from Regions Bank's actions . . . are preempted by the Alabama Comerica Code"; and that Regions Bank is not liable to Rising Phoenix or Tidal Basin in reference to the transfer.

After being served the Complaint, Defendants filed the instant motion to dismiss. The parties then briefed the issues, bringing the case to its present posture.

## II.     LEGAL STANDARD

The Defendants argue that the Court should abstain from entertaining this matter or, in the alternative, seek dismissal of Plaintiff's breach-of-warranty claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will address the legal standards for abstention below. In terms of their motion to dismiss, Defendants argue that Plaintiffs have not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain

5

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. ANALYSIS

### A. Abstention

Defendants first argue that the Court should apply the doctrine of abstention and either stay the matter pending resolution of matters filed in Florida regarding these issues or dismiss the case altogether. The Defendants rely on two different abstention doctrines, which the Court will address in turn.

As a general matter, "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Abstention represents "'a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction,' and '[i]n this analysis, the balance is heavily weighed in favor of the exercise of jurisdiction.'" Id. (quoting Woodford v. Cmty. Action Agency of Greene Cnty, Inc., 239 F.3d 517, 522 (2d Cir. 2001)).

#### I. Background

This case has a complex procedural history and background. The parties largely agree about the events that led to the appearance of this case in the Northern District of New York. Explaining that background in some detail will help explain the Court's decision on abstention. The Court notes that this case is at the motion-to-dismiss stage, and will not attempt to resolve any factual disputes. The Court will simply note where the parties

6

agree on events and take notice of public filings in courts as they are relevant.

Defendants argue that the Court should abstain from entertaining this matter. Defendants provide additional background to this matter in making their argument. Defendants assert that:

> On or about October 4, 2021, a payment of approximately $29.5 million was due from Rising Phoenix to MCI for its subcontracting work. However, unbeknownst to Rising Phoenix, unidentified individuals (the "Hackers") had initiated a plot to steal the funds owed to MCI. In furtherance of the plot, the Hackers unlawfully accessed the email account of an executive at Rising Phoenix and created spoof email addresses that enabled them to impersonate executives at both Rising Phoenix and MCI. The Hackers used this access to defraud Rising Phoenix, resulting in the $29.5 million payment intended for MCI being transferred from Rising Phoenix's bank account to NBT Bank, N.A. to an account at a Fort Lauderdale, Florida branch of Regions Bank. The account belonged to Richard S. Ross, a Florida attorney; as the Hackers had intended, the transfer order named MCI as the intended recipient of the funds but identified Mr. Ross's account number. The transfer order thus contained a mismatch between the purported name of the account owner (MCI) and the account number (Mr. Ross's).

Defendant's Brief, dkt. # 34-1, at 3. Defendants contend that banks holding IOTA accounts have "special obligations to monitor these accounts" established by the Florida bar and courts. Id. at 4. Banks like Regions, Defendants claim, put "additional precautions" on large deposits like the one in this matter. Id. Defendants also contend that an individual who claimed to be Ross called Regions Bank "at least twice" the day after the $29.5 million transfer in an attempt to access the account. Id. That caller spoke English with "a pronounced accent, misstated the name on the account" and could not recall important details about the account or the account owner. Id. Despite all of this suspicious activity, "Regions Bank did not place a hold on the account or launch an investigation." Id. Regions also failed to contact NBT Bank or law enforcement about these suspicious transactions. Id. Instead, Defendants claim, Regions bank "executed (or

7

attempted to execute) a series of wire transfers from Mr. Ross's IOTA account to various banks, mostly in Mexico." Id. at 4-5. Ross admits "he directed the outgoing transfers." Id. at 5. When one bank rejected a transfer of $8 million to an account in Mexico and notified Regions Bank, Plaintiff did not inquire further but instead allegedly made two separate $4 million transfers in other Mexican banks. Id.

When Rising Phoenix discovered this fraud after a phone call from MCI's CEO on October 26, 2021, the company reported the fraud to law enforcement. Rising Phoenix then "paid MCI the full amount Tidal Basin owed MCI for subcontracting services." Id. The United States Attorney's Office for the Northern District of New York and the United States Secret Service opened a criminal investigation. Id. The Secret Service seized more than $4 million from Ross's IOTA account at Regions Bank and more than $700,000 from Regions's general ledger. Id. Those funds are now subject to a forfeiture action in this court.

Rising Phoenix has attempted to recover the funds, but has not yet succeeded in obtaining any. Id. This effort did "[reveal] that [Rising Phoenix] had viable civil claims against both Regions Bank and Mr. Ross for their actions, and inaction, during the fraud." Id. Likewise, "NBT realized that it too had a claim against Regions Bank for its improper acceptance of the original $29.5 million transfer." Id. at 6. Rising Phoenix concluded that the Circuit Court in Broward County, Florida would be the appropriate venue for a lawsuit, since Ross and the Regions Bank branch involved in the transfers were located in that County. Id. Counsel drafted a complaint raising numerous claims under Florida law against Regions and Ross. Id. Rising Phoenix and NBT also raised claims against Regions Bank under the Uniform Commercial Code.

8

Counsel for Rising Phoenix did not immediately file this complaint, but instead contacted counsel for Regions Bank to discuss a pre-filing settlement. Counsel participated in settlement negotiations with Regions Bank's in-house counsel on August 2, 2022. Defendant claims that "[t]hese negotiations were expressly protected by Federal Rule of Evidence . . . 408." Id. Rising Phoenix began the call by explaining that Rising Phoenix planned to sue on these issues and "asked if Regions Bank's counsel was willing to have a settlement discussion protected by Federal Rule of Evidence 408 and Florida's equivalent rule." Id. Counsel for Regions Bank agreed to discussions, but stated that her client "would need to know more about Rising Phoenix and NBT's theories of liability before being able to intelligently respond to a settlement demand." Id. at 6-7. Rising Phoenix's counsel offered to share a copy of a draft complaint, and Regions Bank's counsel accepted the offer. Id. at 7. Defendants contend that this offer to share a copy of the proposed complaint was subject to the "settlement discussion privilege." Id. Counsel for Rising Phoenix then emailed an attorney for Regions Bank, enclosing a copy of the draft complaint and reminding counsel that "this is a pre-filing settlement negotiation protected by Rule 408." Id.

The parties, at Rising Phoenix's suggestion, had another settlement conversation on August 23, 2022. Id. Region Bank's counsel–who eventually filed the Complaint in this action–asked Rising Phoenix to make a demand to which Regions Bank would respond. Id. Rising Phoenix provided a demand at another conference on August 30, 2022. Regions Bank's attorney stated that representatives for the Bank would confer and then respond to the offer. Id. Counsel for Rising Phoenix followed up on September 12, 2022, asking whether Regions Bank had a response. Id. Counsel for Regions Bank stated that

9

"I do not yet have a response. I may have something next week." Id. at 8. Regions Bank had already filed the instant suit; counsel did not inform Rising Phoenix's attorney of this fact in the parties' communications. Id. at 9.

Defendants contend that Regions Bank used the negotiations between the parties and the information that Rising Phoenix shared in drafting the Complaint before this Court. They also assert that Plaintiffs pretended to be considering Defendants' settlement offer while they drafted their Complaint and filed it in this Court. Defendants contend that Plaintiff's conduct was an effort to gain a litigation advantage. Defendants point to portions of Plaintiff's Complaint they contend contains information obtained from the negotiations between the parties.

Defendants filed a complaint in Broward County, Florida Circuit Court on November 14, 2022. The Complaint, Defendants contend, is "substantively the same as the draft complaint Rising Phoenix's counsel shared with Regions Bank on August 2, 2022." Id. at 10.

Plaintiff admits that "[b]efore any lawsuit between these parties began, the Rising Phoenix Defendants made demand upon Regions." Plaintiff's Brief in Opposition to Motion to Dismiss, dkt. # 47, at 4. Plaintiff further admits that "Counsel for the Rising Phoenix Defendants shared a draft complaint with counsel for Regions." Id. Plaintiff contends, however, that "at no point did counsel for the NBT entities participate in those discussions." Id.

Regions filed suit against the NBT entities, as well as the Phoenix Defendants for "good reason," Plaintiff explains. Id. at 4. Plaintiff brought a warranty claim against the NBT entities, and that claim had a one-year statute of limitations that was fast

10

approaching when Regions filed its complaint in this court.  Id. at 4-5.  Since Regions needed to preserve its claim against NBT and NBT had not participated in the settlement negotiations, Regions could not wait to see whether NBT was a party to any suit that Rising Phoenix filed in Florida.  Id.  If, for instance, the Florida suit did not include the NBT entities, "Regions might have lost this valuable and legitimate claim against the NBT entities."  Id.  The Florida complaint that Rising Phoenix filed in November 2022 came after the statute of limitations for claims against NBT had run.  Id.  Regions also filed its claim in the Northern District of New York, where the Defendants have corporate headquarters, to ensure that the Court had personal jurisdiction over the Defendants.  Id. at 5-6.

When Rising Phoenix, Tidal Basin, and NBT filed a complaint in Florida in November 2022, that complaint named Regions Bank, Regions Financial, and Ross.  Id. at 6.  When Regions removed the action to federal court, Defendants dismissed the action.  Id.  Rising Phoenix and Tidal Basin then filed a claim against Ross in state court.  Ross removed the case and Rising Phoenix and Tidal moved to remand.  Id.; see also Chart on p. 7 in Plaintiff's Response.  The District Court in Florida granted this motion to remand.  See Exh. A to Defendants' Letter Brief, dkt. # 68-1.  Upon remand, Rising Phoenix, Tidal Basin, and the NBT entities amended the Broward County Action to include NBT Bank as a Plaintiff and Regions Bank as a defendant along with Ross.  See Plaintiffs' Letter Brief, dkt. # 69.  Before Defendants here served the Amended Complaint on Ross, a "form defendant," Regions removed the case to federal court and sought dismissal of that Southern District of Florida action in favor of the instant case.  Id.  The Defendants in this matter have moved to remand the case to Broward County, arguing that Ross, as a

11

form-defendant, did not seek removal and that in any case complete diversity does not exist in the Florida matter. The motion to remand in federal court is still pending.

"In deciding whether to abstain . . . a district court must first determine whether the federal and state court cases are parallel." U.S. Bank Nat'l Ass'n v. East Fordham DE LLC, 804 Fed. Appex. 106, 107 (2d Cir. 2020). "Federal and state proceedings are parallel for purposes of abstention are parallel for purposes of abstention when the two proceedings are 'essentially the same'–when there is an identity of parties, and the issues and relief sought are the same." Id.

Here, the parties agree the cases at issue are both in federal court. While there is a motion to remand pending, and Defendants here are convinced that remand will occur, presently there is no state court case involving the parties here. Under those circumstances, the Court cannot abstain. The Court will therefore deny the motion with respect to abstention. At the same time, the Court recognizes the complex procedural and factual posture of this matter. If Defendants are correct that remand to the Broward County Court is likely, then a precondition for consideration of the abstention doctrines Defendants cite will have been met. The Court is prepared to entertain arguments about abstention if the case should be remanded. Under those circumstances the Court concludes that the wisest course of action is to deny the Defendants' motion to dismiss on abstention grounds without prejudice to Defendants re-filing their motion after resolution of the motion to remand in the Florida federal case. Because the Court would not consider the motion to dismiss the breach-of-warranty claim if the Court decided on abstention, the Court will also deny the motion to dismiss that claim with leave to renew after the court in Florida renders a decision on remand. Defendants may file any other motion they deem

12

appropriate should the District Court in Florida deny the motion to remand.

## IV.  CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss, dkt. # 34, is hereby **DENIED** without prejudice to refiling if the Court in the Southern District of Florida remands the matter currently pending in that Court to the Broward County court.

**IT IS SO ORDERED.**

**Dated:** September 26, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

13